UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES,

       Plaintiff,

v.                                          No. 07-20344
                                             Honorable Thomas L. Ludington

DEREK PHOENIX,

       Defendant,
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO VACATE, FOR DISQUALIFICATION, AND FOR FUNDS, DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS***

Defendant Derek Phoenix sold crack cocaine in 2007 to a confidential informant. Twice. Pursuant to a plea agreement, he entered a guilty plea to a single count of distributing a substance containing cocaine base. In 2008, this Court sentenced Defendant to 215 months in federal prison. He now moves to vacate that sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Defendant's motion will be denied.

**I**

**A**

Defendant was born in August 1986. His first 14 years, from a criminal justice perspective, were uneventful.

This changed — and dramatically so — after he turned 15. Between the ages of 15–16, he was convicted on six separate occasions for six separate crimes. And two weeks before he turned 17, Defendant was again arrested. But before he was sentenced, Defendant was arrested yet again on cocaine distribution charges. This time, he was charged as an adult.

**B**

About three months after Defendant turned 17, officers found Defendant with crack cocaine and marijuana bagged in small quantities. He was convicted of delivering fewer than 50 grams of cocaine. Although this was a felony offense, the Saginaw County Circuit Court sentenced Defendant to a non-custodial sentence of two years' probation.

Before Defendant turned 18, however, he would collect two more adult criminal convictions.

His next conviction arose out of an incident in February 2004, when Defendant was charged with harassing/alarming conduct. It was a misdemeanor offense, to which he pleaded guilty. The Saginaw County District Court sentenced him to a custodial sentence of five days. The next conviction would carry considerably more time.

It arose out of an incident in May 2004. During a routine traffic stop, the driver attempted to drive off. A chase ensued involving speeds up to 120 miles an hour within the City of Midland. Eventually, state police were able to use stop sticks to deflate the tires and bring the vehicle to a halt. Defendant was driving. Convicted of third-degree fleeing and eluding, a felony, he was sentenced in the Midland County Circuit Court to 12 months incarceration, 36 months of probation.

**C**

Shortly after he was released from custody (now age 18), Defendant was again involved in a routine traffic stop. Again, he fled.

This time, however, he did not give the police the chance to use stop sticks — instead he jumped out of the moving vehicle and attempted to flee on foot. The attempt did not succeed. In

December 2005, the Saginaw County Circuit Court sentenced him to 219 days incarceration, five years' probation. This was his third felony conviction in a two-year span.

**D**

After serving his custodial sentence, Defendant was released. While still on probation, however, he caught another charge. And this time, it was federal.

**1**

In May 2007, Defendant sold crack cocaine to a government informant who was working with BAYANET, a state and federal drug interdiction taskforce. The following month, he again sold crack cocaine to a government informant who was working with BAYANET.

The officers obtained a warrant to search Defendant's home. Executing the warrant, officers found a half a gram of cocaine base, 388 grams of marijuana, four handguns, and one assault rifle.

**2**

In July 2007, a grand jury in the Eastern District of Michigan returned a three-count indictment against Defendant charging him with two counts of distribution of cocaine base and one count of felon in possession of a firearm.

The government then offered Defendant a plea agreement — in exchange for Defendant pleading guilty to one distribution charge, the government would drop the other two charges. Because Defendant would gain three "acceptance of responsibility" points, his advisory sentencing Guidelines would also be reduced from a range of 262–327 months to a range of 188–235 months.

**3**

In November 2007, Defendant accepted the government's plea offer and executed a Rule 11 agreement. The agreement noted that there were no sentencing guideline disputes and that the applicable range was 188 to 235 months.

This calculation, though somewhat involved, is significant to Defendant's § 2255 motion. Defendant's "adjusted" offense level was 24, with a criminal history category of III. Because Defendant accepted responsibility, however, his total offense level was reduced to 21, which would have resulted in a sentencing range of 46–57 months.

But because Defendant had two prior felony convictions that involved a crime of violence (third-degree fleeing and eluding[1]) and a controlled substance crime (delivering fewer than 50 grams of cocaine), the career offender enhancement applied.[2] This raised Defendant's offense level to 34, with a criminal history category of VI. This would have resulted in a Guideline range of 262–327 months.

But Defendant's acceptance of responsibility lowered his offense level to 31, resulting in a Guideline range of 188–235 months.

**4**

A sentencing hearing was held in March 2008. At the hearing, the government noted that Defendant "is a career offender in the legal sense, but he's also a career offender in the practical sense. His criminal history is really amazing." After running through the convictions (and noting "that on most of them, the sentence was probation"), the government concluded that

---

[1] *See United States v. Martin*, 378 F.3d 578, 582–83 (6th Cir. 2004) (classifying this offense as a "prior violent felony" for guidelines purposes).

[2] *See* U.S.S.G. § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.").

Defendant "has clearly confirmed his life style of living by crime. And for the protection of society, it seems to me that at this point he needs a double digit term in prison."

Defendant's counsel also spoke at the hearing, offering a different perspective on Defendant. Asserting that leniency towards his client was warranted, Defendant's counsel explained:

> [H]e's 21. He's not 31, he's not 41. He's 21. He's a very young man. I think he's a very personable young man. I think he just hadn't had an opportunity to have it sink in just how important it is to follow the law. I think he just hasn't taken the drug delivery stuff seriously.
>
> I can assure the court he has now.
>
> He has never been in prison. He served some jail time. If one looks carefully on there, I think the most he did was a year. . . .
>
> What we have here is a man 21 years old — I'll say man — who is a minor crack dealer. Now, the Guidelines would have been, without the career offender designation, he would have been offense level 19, criminal 6 history level 5 with a guideline range of between 57 and 71 months.
>
> If we were looking at that guideline range, frankly, I wouldn't have a lot to say. I'd say well, you can't do the crime — if you can't do the time, don't do the crime because we're, roughly, talking five years is what he would be facing.
>
> Instead, the career offender designation triples the crack Guidelines, it triples if not quadruples the Guidelines. Surely a multiplier based on the fact it's crack cocaine then a multiplier based on the fact it's a career offender. So now the Guidelines come out 188 to 235 months.
>
> I can do the math, I did the calculations. They're correct. But I'd suggest to the court when it looks at it and sees he's 21 years old and he's now facing, according to the court's discretion, somewhere between 188 and 235 months, that is a long time. It's a staggering amount of time.
>
> And, I guess, based on that I'd ask the court to do what you can with him, it's within the court's discretion. But this is — I mean, the Guidelines are the Guidelines, I understand, but they are just that, they're Guidelines.
>
> In this sentence, if the court says 188 months, I could ask the court to consider going less, but at 188 you're talking, what, 15 years[?] . . .

> When one is 21, that is a long, long time. And my feeling is when you're that age, five years is a significant period of time as far as personality development or where you go. So from 21 to 25, one is quite a bit different from 25 to 30, 30 to 35.
>
> He's going to have a long long time. I would just suggest to the court the 235 end of it is almost 20 years and I just don't view that as being a sentence that's necessary.

The Court, after hearing from both sides, first agreed with Defendant's counsel "that this is not a circumstance where we necessarily needs [sic] to meet the high end of the Guidelines."

But the Court also agreed with the government that Defendant's "criminal history record reflects continuous inability to discontinue his criminal misconduct and the inability to discipline himself. And, at best, reflects a risk to community safety."

The Court also noted its authority to impose a sentence outside the Guidelines range (either above or below), explaining:

> Independent of the Guidelines, I will reflect for the record the fact that the court's recognition of its discretion to independently consider the factors that are statutorily the predicate for the court's imposition of sentence under [18 U.S.C. § 3553(a)], I've given separate consideration to those factors in reaching the conclusion with respect to the sentence to impose.

The Court then imposed a within-guideline sentence of 215 months.

### E

Defendant appealed to the Sixth Circuit challenging both the procedural and substantive reasonableness of his sentence. *United States v. Phoenix*, 414 F. App'x 755 (6th Cir. 2011) (per curiam).

Challenging the procedural reasonableness, Defendant first argued that this Court erred in not construing his counsel's sentencing statements "as an argument for a categorical variance."

*Id*. at 759. The Sixth Circuit rejected this argument, explaining: "Considering the totality of the transcript, the district court could reasonably have interpreted Phoenix's request as one for mere leniency. In that sense, Phoenix's counsel was successful." *Id.* 759–60.

Defendant next asserted that this Court had not addressed his counsel's "argument that the career-offender provision rendered his sentence greater than necessary." *Id*. at 760. The Sixth Circuit rejected this argument as well, observing that this Court's remarks at sentencing demonstrated "an understanding of Phoenix's history and, correspondingly, the extent to which the Guidelines sentence was necessary." *Id*.

Finally, Defendant argued that the sentence was substantively unreasonable. The Sixth Circuit rejected this argument too, noting that "his long criminal history supports an inference that his risk of recidivism is very high. Phoenix does not appear to possess any mitigating § 3553(a) factors that the district court did not consider, nor can he show that the court gave an unreasonable amount of weight to his criminal history."

F

Defendant then filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in this Court. His motion enumerates two claims; both concern ineffective assistance of counsel. (As detailed below, the first concerns sentencing; the second, plea bargaining.)

Defendant's motion was referred to Magistrate Judge Charles Binder for a report and recommendation. Judge Binder issued a report recommending that the Court deny Defendant's motion.

Defendant filed objections. He also filed a motion for voluntary disqualification pursuant to 28 U.S.C. § 455(a) and, alternatively, 28 U.S.C. § 47. Before the merits of Defendant's objections can be addressed, his motion for voluntary disqualification must be resolved.

II

Defendant requests that I voluntarily disqualify myself because in my former employment as a judge of the Midland County Circuit Court I presided over Defendant's jury trial for third-degree fleeing and eluding. I also presided over Defendant's case in the United States District Court. Defendant writes that my prior interaction with him in the state court "could give rise to a reasonable question as to [my] impartiality."

A

The United States Code provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The corollary to this rule, however, is that a judge must not unnecessarily disqualify himself. *In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir. 2002).

The judge considering disqualifying himself must "weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge; not to a judge of their choosing." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (citation omitted) (citing *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981)).

Consequently, as noted, a judge is under as much of an obligation not to disqualify himself if unnecessary as he is to disqualify himself if necessary. *In re Certain Underwriter*, 294

F.3d at 302 (citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312), *cited in United States v. Boyd*, 04-CR-80391, 2010 WL 74624, at *1 (E.D. Mich. Feb. 26, 2010) (Cleland, J.).

"In order to justify recusal under 28 U.S.C. § 455," the Sixth Circuit instructs, "the judge's prejudice or bias must be personal or extrajudicial." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)).

"Personal" or "extrajudicial" bias or prejudice is that which "emanates from some source other than participation in the proceedings or prior contact with related cases." *Jamieson*, 427 F.3d at 405 (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003)).

Here, I do not have any knowledge of Defendant from any personal or extrajudicial activity. All the information that I know about Defendant comes from my judicial involvement with the cases assigned to the court that I served. Nothing more. Defendant, moreover, does not identify any facts that I obtained from presiding over the prior state court action that would raise a question about my impartiality in this case. Rather, Defendant asserts the simple fact that I presided over that case warrants my disqualification in this one. The law, as noted, is to the contrary.

Obligated not to disqualify myself unnecessarily, I must deny Defendant's motion for voluntary disqualification.

**B**

Defendant's citation to 28 U.S.C. § 47 does not alter this result. As another court bluntly observed, § 47 "is solely concerned with organization of the Courts of Appeals and has absolutely nothing to do with the District Courts." *United States v. Zarowitz*, 326 F. Supp. 90, 95 n.4 (C.D. Cal. 1971). Part of a chapter of the United States Code entitled "Courts of

Appeals," the section is entitled "Disqualification of trial judge to hear appeal." *See generally* Sheldon R. Shapiro, Annotation, *Construction and application of § 47 of Judicial Code*, 13 A.L.R. Fed. 855 (1972). It provides: "No judge shall hear or determine an appeal from the decision of a case or issue tried by him." 28 U.S.C. § 47.

The purpose of § 47 is "to preclude any member of a Court of Appeals panel from being in the position of having to pass upon his own rulings in the District Court." Shapiro, *supra*, § 2; *see, e.g.*, *United States v. Garramone*, 374 F. Supp. 256, 258 (E.D. Pa. 1974) ("The 'case or issue' language of the statute refers to a final Order of the lower court which may be appealed to a higher court.").

Here, Defendant is not appealing the prior state court action that I presided over. Nor is he appealing the federal court action that I presided over.[3] Rather, Defendant is collaterally attacking the federal action. Section 47 does not apply.

I am obligated to deny Defendant's motion for voluntary disqualification and take up his objections to Judge Binder's report and recommendation.

## III

### A

Any party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report. 28 U.S.C. § 636(b)(1). The district court will make a "de novo determination of those portions of the report . . . to which objection is made." *Id.* The Court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

---

[3] He did that already. *United States v. Phoenix*, 414 F. App'x 755 (6th Cir. 2011) (per curiam).

To demonstrate an entitlement to relief under § 2255 a defendant "must demonstrate the existence of an error of constitutional magnitude . . . . Relief is warranted only where a petitioner has shown a fundamental defect which inherently results in a complete miscarriage of justice." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citations and quotation marks omitted) (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "Claims of ineffective assistance of counsel are appropriately brought by filing a motion under section 2255." *Griffin*, 330 F.3d at 736.

### B

Here, Defendant objects to the report on both of his ineffective assistance of counsel claims. Each is addressed in turn.

### 1

#### a

Defendant's first asserted ground for relief in his § 2255 motion, as noted, concerns his counsel's omissions at sentencing.

Defendant writes that his lawyer was constitutionally ineffective at sentencing because he did not "prepare a sentencing memorandum to allow the to allow the [sic] court to consider departing or varying. Had [defense counsel] made more of a professional decision, it would have been a good decision to prepare a sentencing memorandum."

Defendant further argues that the ineffective assistance of his trial attorney prejudiced him because the career offender enhancement "result[ed] in a sentence far greater than necessary to satisfy the purposes of Section 3553(a) . . . . Because the career offender Guidelines are

grossly excessive and significantly greater than necessary to comply with Section 3553(a), this court should grant a downward variance and impose a sentence near the non-career range."

b

Judge Binder recommends denying this claim as procedurally barred. He notes that the Sixth Circuit addressed both the procedural and substantive reasonableness of Defendant's sentence — including the reasonableness of the career offender enhancement. Judge Binder also notes that a § 2255 motion may not be used to relitigate an issue addressed on direct appeal "absent highly exceptional circumstances, such as an intervening change in the law." Judge Binder finds that Defendant has alleged no such exceptional circumstances.

c

Defendant objects, asserting that his claim is not procedurally barred because an intervening change in the law has occurred. When he was sentenced in March 2008, Defendant asserts, district courts lacked the "ability to vary from the Career Offender Guidelines." But, Defendant further asserts, in *Michael v. United States*, 576 F.3d 323 (6th Cir. 2009), the Sixth Circuit granted district courts this authority.

d

Contrary to Defendant's assertion, *Michael* did not announce a change in the law. Rather, in that case the Sixth Circuit simply applied the familiar rule of *United States v. Booker*, 543 U.S. 220 (2005) "that *all* of the sentencing Guidelines are advisory. That holds true for the career-offender provisions just as it does any other provisions of the Guidelines." *Michael*, 576 F.3d at 327 (quotation marks and citation omitted) (emphasis in original) (quoting *United States v. Liddell*, 543 F.3d 877, 884 (7th Cir. 2008)); *see Gall v. United States*, 552 U.S. 38, 46 (2007)

("[T]he Guidelines are now advisory."); *Kimbrough v. United States*, 552 U.S. 85, 91 (2007) ("[U]nder *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only."); *Rita v. United States*, 551 U.S. 338, 367 (2007) (Stevens, J., concurring) ("[T]he Guidelines are truly advisory.").

*Booker* was decided in 2005. *Gall*, *Kimbrough*, and *Rita* in 2007. Defendant was sentenced in 2008. When he was sentenced, the law was firmly established that the Guidelines — all the Guidelines — are advisory. Federal district courts may vary from them. All of them.

Moreover, in Defendant's case Defendant's trial counsel, this Court, Defendant's appellate counsel, and the Sixth Circuit all recognized that the Guidelines were advisory and that this Court had the authority to vary from them.

At sentencing, Defendant's counsel observed that "the Guidelines are the Guidelines, I understand, but they are just that, they're Guidelines." Further observing that the bottom edge of Defendant's range was 188 months, counsel continued: "I could ask the court to consider going less."

This Court likewise noted that it had considered the § 3553(a) factors "[i]ndependent of the Guidelines." Only then did the Court impose a within-Guidelines sentence.

Defendant's appellate counsel argued that this Court committed procedural error in not addressing trial counsel's "argument for a categorical variance." *United States v. Phoenix*, 414 F. App'x 755, 759 (6th Cir. 2011).

The Sixth Circuit, in turn, addressed the variance argument. Noting that Defendant could have asked for a variance, it rejected his argument that this Court committed procedural error

-13-

since the Court "could reasonably have interpreted Phoenix's request as one for mere leniency." *Id.*

Defendant's objection that his claim is not procedurally barred because an intervening change in the law has occurred will be overruled.

**e**

In passing, the Court notes that even if Defendant had not procedurally defaulted the claim, he would not be entitled to relief because he has not established any prejudice.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his counsel's performance was deficient and that the defendant was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 690–94 (1984)). To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Here, as noted, Defendant asserts that he was prejudiced by the application of the career offender enhancement. He writes: "Because the career offender Guidelines are grossly excessive and significantly greater than necessary to comply with Section 3553(a), this court should grant a downward variance and impose a sentence near the non-career range."

On direct appeal, however, the Sixth Circuit concluded this argument lacked merit, explaining: "We apply a presumption that a sentence inside the guidelines range is reasonable. On appeal, Phoenix asserts only that he barely qualified as a career offender. However, his long criminal history supports an inference that his risk of recidivism is very high." *Phoenix*, 414 F. App'x at 760 (citation omitted) (citing *United States v. Vonner*, 516 F.3d 382, 380 (6th Cir. 2008) (en banc)).

In his present objections, Defendant points to no individualized circumstances or factors that this Court overlooked. Even if Defendant had not procedurally defaulted this claim — which the Court reiterates he did — Defendant's first § 2255 claim would lack merit because he has not shown a fundamental defect in his sentencing that resulted in a complete miscarriage of justice.

**2**

**a**

Defendant's second § 2255 claim is that his counsel was ineffective during the plea bargaining stage. Defendant writes that his counsel "kept tell [sic] me that I did not want to withdraw this plea and that the Federal Government is not like the State. Thus, Movant responsed [sic] that maybe if I hold out I will get a better deal, and then [my counsel] told me, if I decide to hold out it would be much worst [sic]."

Defendant further asserts that his counsel had "ample options" that he "could have put on the negotiation table for Movant to receive a much better deal as discussed in the previous ground, Ground One. Rushing Movant into this plea deal without advocating for a better deal cause[d] Movant to [be] sentenced to 215 month[s] from a non-career-offender guideline sentence of 57–71 month range."

**b**

Judge Binder recommends that this claim be rejected because Defendant has not established either deficient performance or prejudice. Judge Binder first notes that counsel does not perform unreasonably when he informs a client of the plea offer and recommends accepting it. Judge Binder further notes that Defendant cannot establish prejudice: "Phoenix does not even

allege that he would have decided to go to trial absent counsel's advice, he merely asserts that perhaps he would have received a better deal had he held out longer during the plea negotiations."

c

Defendant objects to Judge Binder's "reading of the facts" regarding prejudice. He writes that in his motion "there was some indication that Movant was in the mindset of taking this case to trial [d]ue to the fact that [defense counsel] was not communicating [e]ffectively with Movant causing Movant to be reluctant about the whole proceeding."

d

Defendant's objection lacks merit. As a threshold matter, he does not address Judge Binder's finding that Defendant has not established deficient performance on the part of his counsel. And independent review shows that he cannot.

The Supreme Court instructs that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see United States v. Wynn*, 663 F.3d 847, 851–52 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1949 (2012); *Pough v. United States*, 442 F.3d 959, 968 (6th Cir. 2006) (collecting cases).

Here, the undisputed evidence is that Defendant's counsel discharged that duty. Defendant therefore does not establish deficient performance.

Nor does Defendant demonstrate prejudice. In this context, the Supreme Court instructs, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Here, as noted, Defendant objects that "there was some indication that Movant was in the mindset of taking this case to trial [d]ue to the fact that [defense counsel] was not communicating [e]ffectively."

Rephrased, Defendant is acknowledging that he *wouldn't* have gone to trial if his counsel had communicated more effectively. Instead, he would have taken the plea. And that is precisely what happened.

Defendant has thus not shown a reasonable probability that, but for counsel's alleged deficiencies, Defendant would have gone to trial instead of pleading guilty. On the contrary, Defendant expressly acknowledges that despite his counsel's alleged deficiencies, Defendant took the plea. Defendant has not demonstrated constitutionally ineffective assistance of counsel in plea bargaining.

In sum, Judge Binder's "reading of the facts" was not erroneous. Defendant's § 2255 claim is not that his counsel was ineffective for recommending that Defendant take the deal instead of going to trial. Rather, Defendant's claim is that counsel was ineffective for not "advocating for a better deal."

Because Defendant has not demonstrated either deficient performance or prejudice, his second § 2255 claim lacks merit.

## IV

Before Defendant may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1) (a); Fed.R.App.P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue when the petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable." *Slack*, 529 U.S. at 484-85.

Here, a reasonable jurists would not conclude that the above conclusions are debatable. A certificate of appealability will not be issued.

## V

Accordingly, it is **ORDERED** that Defendant's motion to vacate his sentence (ECF No. 27) is **DENIED**.

It is further **ORDERED** that the report and recommendation (ECF NO. 30) is **ADOPTED**.

It is further **ORDERED** that Defendant's motion of objections (ECF No. 35) is **DENIED**.

It is further **ORDERED** that Defendant's motion for voluntary disqualification (ECF No. 36) is **DENIED**.

It is further **ORDERED** that Defendant's motion for funds (ECF No. 34) is **DENIED AS MOOT**.

It is further **ORDERED** that a certificate of appealability and permission for an application for leave to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: May 1, 2013

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney record herein by electronic means and upon Derek Phoenix, #41846-039 at Allenwood Medium Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 2000, White Deer, PA 17887 by first class U.S. mail on May 1, 2013.

                         s/Tracy A. Jacobs
                         TRACY A. JACOBS